IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SARAH ANNE STERNER,                    Case No. 3:11-cv-01481-MA

              Plaintiff,                       OPINION AND ORDER

       v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

              Defendant.

TIM WILBORN
P.O. Box 370578
Las Vegas, NV 89137

       Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
District of Oregon
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-290

L. JAMALA EDWARDS
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104-7075

       Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff Sarah Anne Sterner seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for a period of disability and disability insurance benefits (DIB) under Title II  of the Social Security Act, 42 U.S.C. §§ 401-433, and Supplemental Security Income (SSI) disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f.  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and § 1383(c).  For the reasons that follow, I remand the decision of the Commissioner.

## PROCEDURAL AND FACTUAL BACKGROUND

On July 11, 2007, plaintiff filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), with a protective filing date of June 28, 2007.  In both applications, plaintiff alleges disability beginning August 15, 2006.  The claims were denied initially and on reconsideration. Plaintiff filed a request for a hearing before an administrative law judge (ALJ).  An ALJ held a hearing on October 15, 2009, at which plaintiff appeared with her attorney and testified.  A medical expert and a vocational expert also appeared and testified. On November 13, 2009, the ALJ issued an unfavorable decision.  The Appeals Council denied plaintiff's request for review on October 11, 2011.  The ALJ's decision therefore became the final decision of the Commissioner for purposes of review.

2 - OPINION AND ORDER

Plaintiff alleges disability due to chronic thoracic pain, post-status carbon monoxide poisoning, and an affective disorder. Plaintiff was born on December 5, 1969, and was 36 years old on her alleged disability onset date, and 39 years old on the date of the decision.   Plaintiff has received a general equivalency diploma (GED), and has past relevant work as a truck driver, a trucking dispatcher, and a facer in a grocery store.   Plaintiff has a history of drug abuse but has been in sustained remission for many years.   Plaintiff was hospitalized for seven days due to carbon monoxide poisoning in January of 2004.   Since that time, plaintiff has reportedly experienced cognitive problems, especially with her memory and attention.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled.   Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920.   Each step is potentially dispositive.   The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to show that the claimant can do other work which exists in the national economy.   Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through December 31, 2011.

3 - OPINION AND ORDER

A claimant seeking DIB benefits under Title II must establish disability on or prior to the last date insured. 42 U.S.C. § 416(I)(3); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since her alleged onset of disability. See 20 C.F.R. §§ 404.1520(b), 404.1571 et seq., 416.920(b), 416.971 et seq.

At step two, the ALJ found that plaintiff had the following severe impairments: status post carbon monoxide poisoning, affective disorder, and substance abuse disorder in full sustained remission. See 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the ALJ found that plaintiff's impairments, or combination of impairments did not meet or medically equal a listed impairment. See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926.

The ALJ assessed plaintiff with a residual functional capacity (RFC) to lift no more than 50 pounds occasionally and 25 pounds frequently; can sit stand, or walk for six hours out of an eight hour day with normal breaks; can occasionally stoop and crouch, but can never climb ladders, ropes or scaffolds and cannot work at unprotected heights or around dangerous machinery; is limited to simple one to three step procedures that are routine and repetitive and do not involve frequent changes in duties; and is limited to jobs that have no forced pace or assembly line pace to the work.

See 20 C.F.R. §§ 404.1527, 404.1529, 416.927, 416.929. At step four, the ALJ found plaintiff unable to perform any past relevant work. See 20 C.F.R. §§ 404.1565, 416.965.

Based on the testimony of the VE, at step five, the ALJ determined that considering plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that plaintiff can perform, such as hand packager, hospital cleaner, and cleaner. See 20 C.F.R. §§ 404.1560(c), 404.1566, 416.960(c), 416.966. Accordingly, the ALJ concluded that plaintiff is not disabled under the meaning of the Act.

## ISSUES ON REVIEW

On appeal to this court, plaintiff contends the ALJ erred by: (1) improperly discrediting her testimony; (2) improperly evaluating the medical opinions of Drs. Greene and Johns; (3) improperly rejecting the lay testimony of her husband, John Stanton.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable

5 - OPINION AND ORDER

mind might accept as adequate to support a conclusion." Id.;
Valentine, 574 F.3d at 690. The court must weigh all the evidence,
whether it supports or detracts from the Commissioner's decision.
Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The
Commissioner's decision must be upheld, even if the evidence is
susceptible to more than one rational interpretation. Batson v.
Comm'r of Soc. Security Admin., 359 F.3d 1190, 1193 (9th Cir.
2004); Andrews, 53 F.3d at 1039-40. If the evidence supports the
Commissioner's conclusion, the Commissioner must be affirmed; "the
court may not substitute its judgment for that of the
Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir.
2001); Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).

I.    **Plaintiff's Credibility**

To determine whether a claimant's testimony regarding
subjective pain or symptoms is credible, an ALJ must perform two
stages of analysis. 20 C.F.R. §§ 404.1529, 416.929. The first
stage is a threshold test in which the claimant must produce
objective medical evidence of an underlying impairment that could
reasonably be expected to produce the symptoms alleged. Tommasetti
v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008); Smolen v. Chater,
80 F.3d 1273, 1282 (9th Cir. 1996). At the second stage of the
credibility analysis, absent affirmative evidence of malingering,
the ALJ must provide clear and convincing reasons for discrediting
the claimant's testimony regarding the severity of the symptoms.

<u>Carmickle v. Comm'r Soc. Security Admin.</u>, 533 F.3d 1155, 1166 (9th Cir. 2008); <u>Lingenfelter</u>, 504 F.3d at 1036.

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. <u>Tommasetti</u>, 533 F.3d at 1039; <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958 (9th Cir. 2002). Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence. <u>Tommasetti</u>, 533 F.3d at 1039.

At the hearing, plaintiff testified that she is unable to work due to memory problems and pain from her back and ribs. Tr. 92. Plaintiff testified that she last worked as a truck dispatcher in 2006, and that she left that job because she was forgetting to tell the drivers where to go. Tr. 115. Plaintiff testified that she recently drove four miles without difficulty and has a current driver's license. However, plaintiff stated that she does not like to drive because she has had several accidents from falling asleep while driving or gets lost or confused. Tr. 85. Plaintiff stated that she can walk a block before needing to rest, can sit for 25 minutes, can lift a gallon of milk, and is able to pick something small off the ground, but is unable to squat without falling over.

Plaintiff testified that she has difficulty holding conversations because she forgets what she is talking about and occasionally slurs her speech. Plaintiff explained that she has difficulty sleeping, and that her sleep patterns are erratic. Tr. 107-08. Plaintiff testified that because of her poor balance, she falls in the shower, and needs help in and out of the tub. Tr. 108. Plaintiff testified that her husband does all of the shopping, housework, laundry and yardwork. Plaintiff stated that she gets distracted when she cooks, and consequently limits herself to warming food the microwave. Tr. 113.

Plaintiff submitted a function report in which she provided that she has difficulty sleeping, needs help getting in and out of the bathtub, needs to rest after five minutes of performing chores, has difficulty driving, and that she suffers pain when taking deep breaths.

The ALJ concluded that plaintiff's medically determinable impairments can reasonably be expected to produce some symptoms, but that the Plaintiff's statements concerning the intensity, persistence, and limiting effects were not entirely credible. The ALJ did not make a specific finding that Plaintiff was malingering. Therefore, the ALJ was required to justify the credibility determination with clear and convincing evidence. Tommasetti, 533 F.3d at 1039. While the ALJ supplied several reasons to discount plaintiff's testimony, I conclude that they do not amount to clear

and convincing support to uphold the adverse credibility determination.

First, the ALJ rejected plaintiff's excess pain testimony because her back and rib pain were not consistent with the medical evidence.[1] The ALJ stated that plaintiff's pain was not supported by laboratory findings, and that her persistence of pain is inconsistent with the record as a whole.

An ALJ may not discredit excess pain testimony simply because it out of proportion to the medical evidence presented. See, e.g., Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990); Rollins v. Massanari, 261 F.3d 853, 856-57 (9th Cir. 2001). Where a claimant alleges limitations from severe pain, the ALJ must look beyond the objective medical evidence in order to properly evaluate a claimant's credibility, such as whether the claimant spends a substantial portion of her day engaged in daily physical activities

---

[1]Here, Plaintiff's chronic thoracic pain results from an on-the-job injury in September of 2002, in which plaintiff was pinned between a pallet and a bumper. At that time, plaintiff reported marked tenderness of the chest wall, with significant pain with deep breaths. Tr. 393. A chest x-ray showed no fractures, and plaintiff was diagnosed with a chest contusion. Tr. 397. As of November 21, 2002, plaintiff reported minimal tenderness at T6-7, and but still had tenderness along the sternum. Tr. 408. Plaintiff returned to light duty, and eventually returned to driving. In January of 2003, plaintiff reported that her back pain had increased with warehouse work, and that she still suffered pain in her sternum. As the ALJ noted, imaging in 2007 showed a normal thoracic spine, but there is no imaging of plaintiff's ribs in the record before me. Tr. 28, 322, 409.

which are of the type that claimant would use in a work setting. Gonzalez, 914 F.2d at 1201.

In discounting plaintiff's pain testimony, the ALJ discussed the findings of Jeffery Solomon, D.O.  On September 27, 2007, Dr. Solomon performed a physical examination.  Dr. Solomon found that plaintiff had good range of motion in the upper extremities, had good motor strength, and that plaintiff could ambulate without assistance. Tr. 350.  Dr. Solomon reported marked limitations with plaintiff's lumbar and thoracic range of motion, but noted his testing was "somewhat unreliable" because of plaintiff's pain behaviors and guarding.  Id. at 350-51.

In referencing Dr. Solomon's evaluation, the ALJ has cited only the lack of corroboration in the medical evidence to discredit plaintiff's excess pain testimony, which is an inadequate reason. See Gonzalez, 914 F.2d at 1201.  And, despite stating that plaintiff's persistence of pain is inconsistent with the record as a whole, the ALJ failed to identify any physical activities that plaintiff's performs which are inconsistent with her allegations of pain.  Id.  To be sure, plaintiff described that she is unable to perform any activities, such as cooking, laundry or housework, due to her pain and memory issues. Thus, the ALJ's reasons for discounting plaintiff's excess pain testimony are inadequate.

Second, the ALJ rejected plaintiff's testimony concerning her depression on the basis that she has not received treatment by a

mental health specialist. A lack of treatment or conservative treatment may be used to discount a claimant's credibility. See, e.g., Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007), cert. denied, 552 U.S. 1141 (2008). However, in this case, plaintiff offered an explanation for her lack of mental health treatment. When asked by the ALJ why she had not sought treatment for her depression, plaintiff responded that she is uninsured. Tr. 103. A lack of funds is an inappropriate basis upon which to discredit a claimant. Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007).

Moreover, at the hearing, plaintiff indicated that the primary reasons she is seeking benefits are her memory issues and chronic back pain. Tr. 92. As the ALJ acknowledged, plaintiff's depressive symptoms appear mild. While plaintiff periodically has been prescribed anti-depressants, her treatment record does not reflect that counseling or therapy has been recommended. Thus, based on the record before me, I conclude that plaintiff's lack of mental health treatment is not an appropriate basis upon which to discredit plaintiff.

Third, the ALJ discredited plaintiff on the basis that the alleged severity of her cognitive impairments were not supported by the objective medical record. Again, a lack of objective medical evidence, by itself, is not an appropriate measure of plaintiff's credibility. Gonzalez, 914 F.2d at 1201. As will be discussed below, the ALJ's evaluation of the medical evidence is without

adequate support. And, although the ALJ cited reasons beyond the medical evidence, those reasons also are not adequately supported.

In the decision, the ALJ cited plaintiff's ability to resume working after her carbon monoxide poisoning incident in 2004, including working as a trucking dispatcher from January to August of 2006, making substantial earnings. Tr. 114-115. While plaintiff's ability to resume work for a period of time seems at first blush inconsistent, a careful examination of the record demonstrates that the ALJ's reasoning on this point is not supported by substantial evidence.

Plaintiff does not contend that she was immediately disabled following her carbon monoxide poisoning incident in 2004. Rather, plaintiff's alleged onset date is August 15, 2006, which is after she left the dispatching job due to memory problems and making mistakes. Moreover, Dr. Bodow, who treated plaintiff immediately following her carbon monoxide incident in January of 2004, stated that plaintiff did not appear to be suffering any acute effects of carbon monoxide poisoning at that time. Tr. 443. Dr. Bodow opined, however, that he was concerned about "prolonged effects of a significant exposure." Id. Furthermore, plaintiff contends her symptoms are worsening over time. Tr. 301.

Lastly, the ALJ also found plaintiff not credible as to the etiology of her cognitive deficiencies. In making this finding, the ALJ relied upon the testimony of the medical expert Betty J.

Feir, who questioned whether plaintiff's cognitive difficulties may have been caused by her past methamphetamine abuse instead of carbon monoxide poisoning.[2]    This finding also lacks record support.

Contrary to Dr. Feir's suggestion, plaintiff's carbon monoxide poisoning incident is well documented in the record.  As noted above, Dr. Bodow noted his concern for a potential long term impact, and he recommended she not resume driving due to potential for central nervous system sequelae.  Tr. 443.  Moreover, plaintiff was forthright about her past drug abuse with Dr. Shields and Dr. Greene who conducted her cognitive testing, and neither attributed her cognitive difficulties to her past drug use.  To be sure, *only* Dr. Feir, who did not examine plaintiff or listen to her testimony, has questioned whether plaintiff's cognitive deficiencies are caused by her past drug use.  There is no dispute that plaintiff has been in sustained remission for many years, and there is no

---

[2]A review of the transcript indicates that Dr. Feir was skeptical about whether plaintiff experienced a carbon monoxide poisoning and whether it could cause cognitive deficits.  Dr. Feir testified:

> Basically what we have here is someone who has allegedly had carbon monoxide poisoning.  Since that time, she has been employed, so I don't know whether the carbon monoxide poisoning is having any effect on her now.  But she also has had a . . . 10-plus years history of meth use, your honor.  And it'll be hard for me to know what might be due from carbon monoxide poisoning and what might be due to her long-term drug use that could have affected her possibly cognitively, too.  Tr. 54-55.

evidence in the record that plaintiff is actively using drugs or alcohol, or that she has inconsistently reported to her medical providers about her past drug usage. The ALJ's reasoning is not supported by substantial evidence and thus, the ALJ improperly discredited plaintiff on this basis.

In short, "[s]heer disbelief is no substitute for substantial evidence." Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004). The ALJ has failed to provide clear and convincing reasons supported by substantial evidence to discount plaintiff's testimony.

## II.  **Medical Evidence**.

To reject the uncontroverted opinion of a treating or examining physician, the ALJ must present clear and convincing reasons for doing so. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. Bayliss, 427 F.3d at 1216. An ALJ can meet this burden by providing a detailed summary of the facts and conflicting medical evidence, stating his own interpretation of that evidence, and making findings. Tommasetti, 533 F.3d at 1041; Carmickle, 533 F.3d at 1164. The weight afforded a non-examining physician's opinion depends upon the degree to which they provide supporting explanations for their opinions. 20 C.F.R. §

404.1527(d)(3); <u>Ryan v. Comm'r of Soc. Sec.</u>, 528 F.3d 1194, 1201
(9th Cir. 2008).

### A.    Cognitive Impairments

Two examining physicians evaluated plaintiff for her cognitive
impairments, Thomas Brent Shields, Ph.D. and Katherine Greene,
Psy.D. Plaintiff argues that the ALJ incorrectly rejected the
opinion of Dr. Greene relying instead upon Dr. Feir's opinion. I
agree.

### 1.    Dr. Shields

On October 8, 2007, Dr. Shields, conducted a comprehensive
psycho-diagnostic evaluation on behalf of DDS. Dr. Shields
conducted a Mini-Mental State Exam (MMSE), finding that plaintiff's
immediate auditory memory appeared intact, but that her remote
recall is poor. Dr. Shields estimated plaintiff's intellect in the
Low Average to Average range. Dr. Shields noted that the
credibility of plaintiff's self-reporting was "difficult to
assess." Tr. 355. Dr. Shields offered the following opinion:

> On the one hand, her memory complaints appear a bit
> egregious. On the other hand, if she really did endure
> such severe carbon monoxide poisoning, it would be
> difficult to confidently rule-out such cognitive problems
> during an interview-based assessment such as this. <u>Id.</u>

Dr. Shields recommended a neuro-psychological evaluation, with
memory and credibility testing. Dr. Shields also noted that if
plaintiff's performance on the MMSE Recall task was accurate,
plaintiff would have a "very difficult time" remembering

15 - OPINION AND ORDER

instructions.   Tr. 356.   Dr. Shields diagnosed plaintiff with depressive disorder and a history of substance abuse in sustained full remission.

### 2.  Dr. Greene

On December 3, 2008 and May 29, 2009, Katherine Greene, Psy.D., conducted a Neuropsychological Evaluation of plaintiff. Dr. Greene conducted an interview with plaintiff and her husband, and a second interview with plaintiff and plaintiff's mother.   Dr. Greene reviewed plaintiff's medical records and administered a battery of tests.   Dr. Greene noted that plaintiff applied her best efforts, with no indication of malingering, and therefore considered the test results valid.

On testing, Dr. Greene found that on the Wechsler Adult Intelligence Scale IV (WAIS-IV), plaintiff received a full scale IQ of 96, which is Average.   On the Boston Naming Test, plaintiff scored in the fourth percentile, or Borderline range.   On the Language Fluency (FAS) test, plaintiff performed in the Severely Impaired range, or less than one percent.   On Visual Perception, plaintiff scored in the Average range.   On testing of plaintiff's Attention and Executive Function (Digit Span, Trail Marking, Wisconsin Card Sorting Test, and Stroop), plaintiff scored between Average and Moderately Impaired depending on the task.   On the attention and executive function testing, plaintiff's scores

indicated a capacity to attend to simple tasks, but her ability to process complex information was poor.  Tr. 447.

On plaintiff's Memory and Learning, plaintiff scored in the Borderline range on the WRAML-2.  Testing showed that plaintiff could repeat information, but was impaired when she was required to recall information.  Plaintiff's Fine and Gross Motor testing demonstrated that she was Severely Impaired bilaterally.  On Personality testing, plaintiff reported that she is moody and short tempered.  Dr. Greene also indicated that plaintiff's self-reported symptoms registered in the severe range of depression.

Based on the evaluation, Dr. Greene diagnosed Dementia Due to General Medical Condition, noting that plaintiff's "memory and other cognitive disturbances are due to brain injury from a medical eitology."  Tr. 448.  Dr. Greene also diagnosed an Adjustment Disorder with Depression and Anxiety, with a rule-out Mood Disorder Due to a Medical Condition, and assigned a Global Assessment of Functioning (GAF) score of 59.  Id.

Dr. Greene also completed a Mental Residual Functional Capacity Assessment (MRFC).  In the MRFC, Dr. Greene indicated that plaintiff suffered marked limitations in 13 of 20 areas, including understanding and memory, sustained concentration and persistence, social interaction, and adaption.

////

////

17 - OPINION AND ORDER

### 3.  Dr. Feir

At the hearing, Dr. Feir testified that she did not understand why Dr. Greene diagnosed dementia, and noted that Dr. Greene assigned a GAF of 59 which Dr. Feir found inconsistent with the high number of marked limitations in the MRFC. Dr. Feir testified that she found Dr. Greene's MRFC inconsistent with the body of Dr. Greene's written report. Dr. Feir also testified that plaintiff's testing with Dr. Shields indicated average to low average memory, which is inconsistent with Dr. Greene's diagnosis of Dementia. Dr. Feir stated that she believed Dr. Greene used an incorrect scale, and that perhaps Dr. Greene's limitations should be moderate instead of marked.

### B.  Analysis

The ALJ gave Dr. Greene's opinion that plaintiff suffers marked limitations and diagnosis of dementia very little weight, finding it inconsistent with the objective medical record and the "longitudinal record as a whole." Tr. 33. The ALJ instead gave "some weight" to the opinion of Dr. Feir. The ALJ concluded that plaintiff has some cognitive impairments which limit her to performing simple one to three step tasks, but that plaintiff's cognitive impairments do not render her disabled. Because Dr. Greene's opinion is contradicted by Dr. Shields and Dr. Feir, the ALJ was required to provide specific and legitimate reasons to reject it.

The ALJ relied upon Dr. Feir's testimony to reject Dr. Greene's diagnosis of dementia.   Dr. Feir testified that the dementia diagnosis it was inconsistent with evaluation conducted by Dr. Shields.   Dr. Shields did not diagnose dementia, and to the extent that Dr. Shields offered a different diagnosis, substantial evidence supports the ALJ's findings.   And, as the ALJ noted, a GAF score of 59 typically indicates moderate symptoms, which the ALJ could find inconsistent with the marked limitations Dr. Greene checked in the MRFC.   Even if I would not have found the GAF score inconsistent with the MRFC, it is a rational interpretation, and I will not second-guess it.   Batson, 359 F.3d at 1195.

However, contrary to the ALJ's conclusion, Dr. Shields and Dr. Greene's assessments were consistent in that both found plaintiff's intellectual functioning remains in the low average to average range, but that plaintiff's memory – particularly her ability to recall information – was poor.

Additionally, Dr. Feir's testimony that she did not understand the dementia diagnosis reveals that Dr. Feir had difficulty believing that plaintiff suffered any significant cognitive impairments as a result of her carbon monoxide exposure.[3]   Dr.

_____

[3]As discussed above, Dr. Feir attributed plaintiff's cognitive difficulties to her past drug use.   And, when plaintiff responded that she was evaluated by Dr. Greene at the request of her attorney, Dr. Feir stated "I suspected that."   Tr. 59.   To the extent the ALJ relied upon this to discount Dr. Greene's evaluation, it was error.   Lester v. Chater, 81 F.3d 821, 832 (9th Cir. 1995)("The purpose for which medical reports are

Greene's report indicated that plaintiff meets the definition of dementia due to a brain injury as it is defined in the DSM-IV-TR. *Diagnostic and Statistical Manual of Mental Disorders,* 147-151 (4th ed. Text Revision 2000)(DSM-IV-TR). The DSM-IV-TR provides that dementia is characterized by the "development of multiple cognitive deficits that include memory impairment" and (1) a deterioration of language function, (2) an impaired ability to execute a motor activity despite intact motor ability, (3) failure to recognize or identify objects despite intact sensory function, or (4) a disturbance in executive function. DSM-IV-TR at 150-51. Having carefully reviewed Dr. Greene's report, and reviewing the characteristics of dementia as defined in the DSM-IV-TR, I find the ALJ's reliance on Dr. Feir's opinion on this point questionable.

When rejecting Dr. Greene's opinion that plaintiff suffered a great number of marked limitations, the ALJ also relied on Dr. Feir's testimony that Dr. Greene's findings were not two or three standard deviations below the mean, that plaintiff would be hospitalized if the marked limitations were accurate, and that the marked limitations in the MRFC were inconsistent with the body of Dr. Greene's report. I find that none of these reasons constitute substantial evidence. An ALJ cannot rely solely upon the testimony of a non-examining physician alone to disregard the opinion of a

obtained does not provide a legitimate basis for rejecting them.").

treating or examining physician.  Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1995).  The ALJ must have a corroborating basis, whether from medical records or otherwise, that sways the weight of the evidence.  Id.

In this regard, the ALJ failed to cite any reasons beyond Dr. Feir's own interpretation of Dr. Greene's report and unwarranted speculation of plaintiff's cognitive deficiencies to discount Dr. Greene's MRFC.  To be sure, despite testifying being unsure whether plaintiff's memory issues could result from carbon monoxide poisoning, Dr. Feir's suggested that plaintiff's difficulties with confusion and distraction actually were "motivational."  Tr. 68. Dr. Feir did not examine plaintiff, or offer a convincing explanation for her opinion.  Thus, Dr. Feir's interpretation of Dr. Greene's report and whether it translates into marked limitations or moderate limitations in the MRFC simply does not constitute substantial evidence to warrant rejection of Dr. Greene's opinion.  Lester, 81 F.3d at 832; Ryan, 528 F.3d at 1201-02.

The ALJ also rejected Dr. Greene's assessment of marked limitations on the basis that the MRFC was inconsistent with the record as a whole.  However, the ALJ has failed to articulate specific portions of the record which are inconsistent with plaintiff's allegations of severe cognitive deficiencies.  To be sure, plaintiff's activities of daily living and the testimony of

Mr. Stanton are wholly consistent with plaintiff's allegations of disability.   Thus, I conclude that the ALJ's findings in this regard are inadequately supported.

In summary, I conclude that the ALJ has failed to provide specific and legitimate reasons for rejecting Dr. Greene's opinion. While the ALJ appropriately found that Dr. Shields and Dr. Greene offered differing diagnoses of plaintiff, I cannot conclude, on the basis of that reason alone, that the ALJ has provided specific and legitimate reasons for rejecting the bulk of Dr. Greene's opinion.

### C.   Physical Limitations

Plaintiff submits that the ALJ erred in discounting the opinion of Dr. Johns, an examining physician who conducted an examination of plaintiff an completed a Medical Source Statement on July 31, 2009.   Tr. 455-60.   Dr. Johns opined that plaintiff could lift and carry less than 10 pounds occasionally, could stand for less than two hours in an eight hour day, and could sit for less than 30 minutes.   Tr. 457.   Dr. Johns also determined that plaintiff has postural limitations such that she should never climb, balance, kneel, crouch, crawl or stoop due to poor balance. Also, Dr. Johns determined that plaintiff has manipulative limitations such that she may only occasionally perform reaching, handling, and fingering due to her difficulty with fine motor skills.

The ALJ noted that Dr. John's limitations indicate less than the full range of sedentary work, and Dr. John's opinion very little weight.  Instead, the ALJ determined that plaintiff could lift 50 pounds occasionally and 25 pounds frequently.   The Commissioner contends that the ALJ provided specific and legitimate reasons for discounting Dr. Johns' opinion.  I disagree.

The ALJ rejected Dr. John's opinion because (1) it was "exclusively based" on plaintiff's self-reported symptoms, (2) was inconsistent with plaintiff's medical record, and (3) was inconsistent with Dr. Solomon's examination.   The ALJ's doubt concerning plaintiff's overall credibility does not amount to substantial evidence to reject Dr. Johns' opinion where Dr. Johns did not discredit those reports in his own observations.  Ryan, 528 F.3d at 1199-1200; Edlund, 253 F.3d at 1159.

The purported inconsistencies between plaintiff's 2009 medical visits and Dr. Johns' evaluation also are not supported by substantial evidence.  The medical record cited by the ALJ shows that in May of 2009, plaintiff sought treatment from her primary care provider, Nurse Practitioner Linda M. Picker, for an epidermal cyst.  Nurse Picker's treatment notes reflect that plaintiff's muscloskeletal and neurological exam was within normal limits.  Tr. 466.  However, a review of other notes indicate that Nurse Picker did not feel qualified to complete disability forms, and recommended that plaintiff have a full physical and musculo-

skeletal exam and neurological exam completed by another provider. Tr. 464. Thus, it appears that Nurse Picker recommended plaintiff receive a more comprehensive physical assessment. Thus, based on a more comprehensive review of plaintiff's 2009 medical records, I cannot conclude that Dr. Johns' evaluation is inconsistent with Nurse Picker's notes.

Lastly, the alleged inconsistency between Dr. Johns and Dr. Solomon's evaluations is not supported by substantial evidence sufficient to discredit Dr. Johns' assessment. As discussed above with respect to plaintiff's credibility, Dr. Solomon found marked restrictions with plaintiff's thoracic spine, but noted that his results were unreliable due to plaintiff's complaints of pain. The ALJ failed to provide clear and convincing reasons to discredit plaintiff's excess pain testimony. Accordingly, the results of Dr. Johns and Dr. Solomon indicate that plaintiff does have significant physical limitations.

### III. Lay Testimony

Lay witness testimony as to a claimant's symptoms or how an impairment affects his ability to work is competent evidence, which the ALJ must take into account. See Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009); Stout v. Commissioner, Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006); Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ is required to account

for competent lay witness testimony, and if it is rejected, provide germane reasons for doing so.  <u>Valentine</u>, 574 F.3d at 694.

Plaintiff's husband, John Stanton, testified at the hearing. Mr. Stanton described that plaintiff has had multiple accidents driving, and drives very seldom now.  He testified that plaintiff falls down when sitting, and fell down the stairs due to balance problems, Tr. 120-21.  Mr. Stanton described how plaintiff forgets things, even after writing them down.  Tr. 122.  Mr. Stanton testified that plaintiff no longer cooks because she walks away from what she is doing, and that plaintiff gets confused about how much to feed their animals.  Tr. 123-24.

In this case, the ALJ failed to discuss Mr. Stanton's testimony and to provide germane reasons for rejecting it. Recognizing this error, the Commissioner contends that the error was harmless because Mr. Stanton described limitations similar to those described by plaintiff.  The Commissioner submits that even if Mr. Stanton's testimony were fully credited, there is no impact on the ultimate disability determination because the ALJ appropriately rejected plaintiff's testimony.  As discussed above, the ALJ failed to provide clear and convincing reasons to reject plaintiff's testimony, and thus the ALJ's reasons are no more valid when applied to Mr. Stanton.  <u>See</u> <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 885 (9th Cir. 2006)(failure to discuss lay testimony not

harmless where ALJ did not make legally sufficient adverse credibility determination).

Mr. Stanton corroborated the plaintiff's symptoms, including plaintiff's forgetfulness, her loss of balance, and driving difficulties. Fully crediting Mr. Stanton provides substantial support for plaintiff's description of her symptoms. See Stout, 454 F.3d at 1056; Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012). Accordingly, the failure to provide germane reasons for discounting Mr. Stanton's testimony was not inconsequential to the disability determination, and thus was not harmless. Robbins, 466 F.3d at 885; Molina, 674 F.3d at 1116.

## IV. **Remand.**

After finding the ALJ erred, this court has the discretion to remand for further proceedings or for immediate payment of benefits. Vasquez v. Astrue, 572 F.3d 586, 593 (9th Cir. 2009); Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate where there is no useful purpose to be served by further proceedings or where the record is fully developed.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." Harman, 211 F.3d at 1178. The Court should grant an immediate award of benefits when:

(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. Id.

Where it is not clear that the ALJ would be required to award benefits were the improperly rejected evidence credited, the court has discretion whether to credit the evidence. Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003).

As discussed above, the ALJ failed to provide legally sufficient reasons for rejecting plaintiff's testimony concerning the severity and intensity of her cognitive impairments and back and rib pain. The ALJ failed to provide legally sufficient reasons for discounting the medical opinions of Dr. Greene and Dr. Johns. Dr. Greene's evaluation and MRFC demonstrate that plaintiff suffers marked limitations in many areas, importantly, memory, attention and sustained concentration. Dr. Johns described physical and postural limitations. The ALJ also failed to credit the testimony of plaintiff's husband, who corroborated plaintiff's testimony that she suffers severe cognitive impairments. At the hearing, there was testimony from Vocational Expert Shawny McCormack, that if a claimant had the limitations as described by plaintiff, and those limitations were completely credible, there are no jobs in the national economy that the claimant could perform. Tr. 134-35.

When plaintiff's testimony, Dr. Greene and Dr. Johns' opinions, and the lay testimony is fully credited, it is abundantly clear that plaintiff is disabled within the meaning of the Act. See Benecke, 379 F.3d at 595-96. Because there are no outstanding issues that must be resolved and it is clear from the record that plaintiff is entitled to disability benefits, I reverse the ALJ's decision and remand for an immediate payment of benefits. Id.

Because I have remanded for an immediate award of benefits, I do not address plaintiff's remaining issues.

### CONCLUSION

Based on the foregoing, the Commissioner's decision is REVERSED, and this case is REMANDED for an immediate calculation and award of benefits.

IT IS SO ORDERED.

DATED this _10_ day of DECEMBER, 2012.

Malcolm F. Marsh
United States District Judge